MAYSVILLE STREET RAILROAD & TRANSFER CO. v. MARVIN.[1]

(Circuit Court of Appeals, Sixth Circuit. October 2, 1893.)

No. 80.

1. DEATH BY WRONGFUL ACT—WHO MAY SUE—FOREIGN ADMINISTRATORS.
    A statute giving foreign administrators a right to sue for the recovery of "debts due their decedents" (Gen. St. Ky. c. 39, art. 2, § 43) confers no capacity to sue for the wrongful death of such decedent, although such power has been given to domestic administrators.

2. SAME.
    An act giving the "personal representative" a right of action for the wrongful death of his decedent (Gen. St. Ky. c. 57, § 1) will not be construed to confer such right upon a foreign administrator, contrary to the common-law rule and the established policy of the state. Dennick v. Railroad Co., 103 U. S. 11, distinguished.

3. SAME—STATE AND FEDERAL COURTS.
    A foreign administrator cannot sue in a federal court for the wrongful death of his decedent when the state laws have given him no capacity to maintain such a suit in the state courts.

In Error to the Circuit Court of the United States for the District of Kentucky. Reversed.

Statement by LURTON, Circuit Judge:

The deceased, Marion Wilson, was killed at Maysville, Ky., by being run over by a street car operated by one of the servants of the appellant company. He was a citizen and resident of the state of Ohio, in which state the appellee, Marvin, was appointed administrator. The appellant company is a Kentucky corporation, exclusively engaged in operating a street-car line in the city of Maysville. The Ohio administrator brought this suit in the United States circuit court for the district of Kentucky, at Covington. There was a demurrer to the petition, on the ground that an Ohio administrator could not maintain a suit in the courts of Kentucky. This demurrer was overruled. Thereupon issue was joined, and a trial had by jury, resulting in a verdict and judgment against the railroad company.

A. M. J. Cochran, (Wadsworth & Son and W. H. Mackoy, of counsel,) for plaintiff in error.

G. Bambach, L. W. Robertson, and Wm. M. Tugman, for defendant in error.

Before BROWN, Circuit Justice, LURTON, Circuit Judge, and SWAN, District Judge.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The vital question involved in this appeal is as to the capacity of an administrator appointed in one state to recover damages for the death of his intestate in the courts and under a statute of another state. The capacity conferred by letters of administration is limited to the state within which they are granted, and, in the absence of a statute giving effect to a foreign appointment, no suit can be maintained in the courts of another state by such an administrator. This is the well-settled rule of the common law. Schouler, Ex'rs, § 164, and authorities cited.

[1] Rehearing denied December 4, 1893.

In Noonan v. Bradley, 9 Wall. 400, Mr. Justice Field says:

"In the absence of any statute giving effect to the foreign appointment, all the authorities deny any efficiency to the appointment outside of the territorial jurisdiction of the state within which it was granted. All hold that, in the absence of such a statute, no suit can be maintained by an administrator in his official capacity, except within the limits of the state from which he derives his authority. If he desires to prosecute a suit in another state, he must first obtain a grant of administration therein in accordance with its laws."

This rule is well recognized in the state of Kentucky, and the ground upon which it rests is well stated by Robertson, C. J., who, speaking for the court, said:

"It is a well-settled doctrine that letters of administration granted by one nation or state can have no operation per se within the jurisdiction of another nation or state, and that, therefore, such authority, being local, can, de jure, vest no right of suit in any other country than that in which it was granted; for, as it is the duty of every government to secure to its own citizens a just participation in the distribution of the assets within its protection and control, belonging to every deceased debtor of any of those citizens, wherever he may have lived or died, it is an established rule of international law that assets shall be administered under authority of the local sovereign. And, consequently, as every administrator must also account to the proper tribunal of the country from which he derived all his authority, he is responsible to no foreign government for the administration of assets received under the authority, and cannot either sue or be sued in his representative character in a foreign state." Fletcher's Adm'r v. Sanders, 7 Dana, 348.

The conditions and circumstances under which nonresident administrators of nonresident decedents may sue in the courts of Kentucky are found in sections 43 and 44 of article 2 of chapter 39 of the General Statutes of Kentucky, which chapter is entitled "Executors and Administrators." These sections are as follows, to wit:

"Sec. 43. By giving bond with surety resident of the county in which action is brought, non-resident executors and administrators of persons, who at the time of their deaths were non-residents of the commonwealth, may prosecute actions for the recovery of debts due to such decedents. Sec. 44. In such actions the plaintiff's letters testamentary or of administration, granted by a proper tribunal properly authenticated must be filed; and no judgment shall be rendered until the plaintiff executes bond, with good surety resident of the county, to the commonwealth, conditioned to pay any debt due by his decedent to any resident of the state to the extent assets shall come to his hands. Actions may be brought on this bond for the use of any creditor of said decedent for three years after the date of such receipt of assets by such executor or administrator in the state, but not after."

Foreign appointments are recognized, and authority given to such foreign administrators to sue in the instances named in the statute, and upon compliance with the conditions prescribed. To this extent, and to this extent only, do the statutes of Kentucky modify or alter the common law which limits the official character of an administrator to the state of his appointment. This statute, upon compliance with the provisions contained in section 44, empowers foreign executors and administrators to "prosecute actions for the recovery of debts due to such decedent."

Now, this action is obviously not brought to recover a "debt" due to the decedent Wilson. A claim for a tort, not reduced to judg-

ment, has never been held to be a debt. The supreme court of Massachusetts, in Gray v. Bennett, 2 Metc. 526, in defining the legal meaning of the term "debt," said:

"The word 'debt' is of large import, including not only debts of record or judgment and debts by specialty, but also obligations arising under simple contracts, to a very wide extent, and, in its popular sense, includes all that is due to a man under any form of obligation or promise."

A claim arising out of the official neglect of a county court clerk was held not to be a "debt," within the meaning of the statute authorizing an attachment for "debt." Dunlop v. Keith, 1 Leigh, 430.

A claim against a corporation for damages for the negligent loss of a steamboat was held not to be a "debt," within the meaning of an act making stockholders liable for all the "existing debts" of the corporation. Cable v. McCune, 26 Mo. 371.

In Tribune Co. v. Reilly, 46 Mich. 459, 9 N. W. 492, it was held that a claim for damages sounding in tort is not a debt before it has been prosecuted to judgment.

In Zimmer v. Schleehauf, 115 Mass. 52, it was held that a claim for damages for a tort does not become a debt by verdict before judgment; but if a claim for a tortious killing could be said to be a "debt," within the meaning of this statute, yet it was never a "debt due the decedent." The cause of action arose only upon the death of the decedent, and as a consequence of his death. It was not a right of action belonging to the decedent, and surviving to his administrator. The statute gives the right of action to the representative. It is not a preservation of a right of action, but the creation of a totally new right of action.

Referring to the statute conferring this right of action, the supreme court of Kentucky, in Railroad Co. v. Case's Adm'r, 9 Bush, 728, said:

"The right of action allowed by the first section is not identical with those growing out of personal injuries, and which, under the tenth chapter of Revised Statutes, survive to the personal representative."

See, also, Railroad Co. v. Sanders, 86 Ky. 263, 5 S. W. 563, where the third section of the same act is construed as conferring a new and original right of action in the persons authorized to sue.

It is clear, therefore, that this statute does not empower a foreign representative to sue in the courts of Kentucky for the death of his decedent.

But counsel contend that, under the act authorizing a suit for the wrongful death of another, this suit may be instituted by a foreign, as well as by a domestic, administrator. This suit is instituted by virtue of the first section of chapter 57 of the General Statutes of Kentucky. It is as follows, to wit:

"If the life of any person not in the employment of a railroad company shall be lost in this commonwealth by reason of the negligence or carelessness of the proprietor or proprietors of any railroads, or by the unfitness, or negligence, or carelessness of their servants or agents, the personal representative of the person whose life is so lost may institute suit and recover damages in the same manner that the person himself might have done for any injury where death did not ensue."

The contention of counsel is that under this section the power is given to the "personal representative" of the decedent "to institute suit and recover damages in the same manner that the person himself might have done for any injury where death did not occur," and that no distinction is recognized between a domestic and foreign administrator. The argument is that the appellee was the "personal representative" of the decedent, and the only personal representative, and that, by the letter of the statute, he is authorized to sue. The policy underlying the rule which refuses recognition of letters of administration in a state other than that in which they were granted is founded upon the inconvenience of allowing assets to be taken from one state into another, until domestic creditors are satisfied. The recovery under the section authorizing this suit will be for the benefit of the general estate of the decedent. Creditors have an interest, and may reach the funds as a general asset of the estate. In this respect this statute differs widely from those of most of the states. Speaking of the recovery under this statute, Pryor, J., said:

"The legislature intended to confine the right of recovery to the personal representative, and, as there is no direction as to the disposition of the fund recovered under that section, the personal representative would hold it like other assets left by the intestate." Givens v. Railway Co., 89 Ky. 234, 12 S. W. 257.

The act relating to suits by foreign administrators carefully guards and protects the rights of domestic creditors. Is it to be presumed that, by the use of the general designation "personal representative," the legislature intended to so radically change the whole policy of the state as to permit this class of claims to be prosecuted by foreign administrators, without any protection to domestic creditors? What authority is there to require a bond conditioned as required by section 44 of chapter 39? We know of none. If the suit is to be maintained at all, it must be by assuming that the legislature intended to confer the right of suit equally upon domestic and foreign representatives of the deceased. But suppose there are two administrations,—one foreign and the other domestic; which is vested with the right under the construction contended for? The section now under consideration makes no reference to the act relating to the subject of suits by foreign administrators. The two acts, in so far as they relate to the same subject, should be construed together. But this relation is a forced one, and only arises by including a foreign personal representative within the general designation of "personal representative." Did the legislature intend to enlarge the powers of foreign representatives? We think not. That was not the subject with which it was dealing. The matter in hand was to create a right of action for the wrongful death of another. It might have given this action to a widow or next of kin. It might have conferred it only on the personal representative. The recovery might be for the exclusive benefit of the next of kin or widow, or both, or it might be made an asset for general administration. The lawmaking power chose, in its discretion, to confer this new right of action

only upon the "personal representative" of the decedent, and, in making no special disposition of the recovery, it thereby constituted the claim an asset for general administration. Why should it be assumed that the legislative intention was that this asset might be recovered by a foreign administrator, and the recovery removed to the state of administration? With reference to other assets—such as debts due to the decedent—a very different policy was enforced, and domestic creditors fully protected against the effect of recognizing foreign appointments. Why such a discrimination? If this recovery was for the exclusive benefit of the widow and next of kin, there would be more reason to assume that a foreign administrator was within the legislative intent.

The status of foreign administrator was fully and accurately defined by the legislation on that subject. Under the law of Kentucky, no one was entitled to recognition as the "personal representative" of a decedent who was not appointed by the courts of that state, or who could not bring himself within the terms of the act relating to the suits of foreign representatives. It would be a great stretch of reasoning to assume, in view of the common law on this subject and of the statutory modifications of that law by the state of Kentucky, that a foreign administrator was included in every act conferring power or prescribing the duties and privileges of "personal representatives."

But it is suggested in argument that where an act is capable of two constructions, one of which will make it obnoxious to some constitutional objection, while the other will avoid such objection, the latter construction should be put on the act in order to uphold it. The argument is that a construction of the statute conferring a right of action for the wrongful death of decedent, whereby the remedy is confined to a representative appointed by the state of Kentucky, would deprive nonresidents, having no personal estate within the state, of all remedy, inasmuch as there could be no administration in Kentucky upon such estates, and that the act would then be void, as in contravention of section 2, art. 4, of the federal constitution, which provides "that citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states." It is not clear that there could not be an administration in Kentucky on the estate of such a nonresident decedent. It would rather seem that such a claim would be an "asset" for administration. That there cannot be administration on the estate of a nonresident who has no estate for administration may be admitted. But this claim, although it arose after the death of the decedent, was an asset for administration. It became, when realized, a part of the general estate, and might be subjected by creditors. It was a property interest, available for the payment of debts of the decedent, and, as such, was an asset. But, however this may be, the act is not equally capable of two constructions, one rendering it unconstitutional, and the other obviating such objection. It is not a case of doubt, and, whatever the fate of the act, we are content to hold that it does not authorize a suit in the courts of Kentucky by a foreign administrator.

The case of Dennick v. Railroad Co., 103 U. S. 11, has no application whatever. The question now decided was not there presented. Mr. Justice Miller, in concluding the opinion in that case, said:

"Let it be remembered that this is not a case of an administrator appointed in one state, suing in that character in another state, without any authority from the latter. It is the general rule that this cannot be done. The suit here was brought by an administratrix in a court of the state which had appointed her, and of course no such question could be made."

If the appellant company had been sued in the courts of Ohio, a very different question would have arisen. The question we have to decide is as to whether, under the law of Kentucky, the Ohio administrator of the decedent could maintain a suit in the courts of Kentucky for the death of his decedent. If he could, then the diverse citizenship of the parties gave the federal courts jurisdiction. If he could maintain no suit in the courts of Kentucky by reason of the terms of the act creating the right, then he cannot have a status in a federal court, for no statute has vested in him any right of action in any court.

The demurrer should have been sustained, and the suit dismissed, because the plaintiff stated no cause of action, either at common law or under the statute. The judgment will be reversed, and the cause remanded for further proceedings in accordance with this opinion.