## WILLIAMS v. CAMDEN INTERSTATE RY. CO.

(Circuit Court, E. D. Kentucky. September 13, 1904.)

1. WRONGFUL DEATH—STATUTES—FOREIGN PERSONAL REPRESENTATIVE—RIGHT TO SUE.

Bates' Ann. St. Ohio, § 6133, provides that any executor or administrator duly appointed in any other state or country may prosecute any action or proceeding in any Ohio court in his representative capacity in like manner and under like-restrictions as a nonresident may be permitted to sue. Sections 6134, 6135, confer the right to sue for wrongful death on the personal representative, and provide for a settlement of the case after suit brought, conditioned, however, on the fact that the personal representative was appointed in Ohio. *Held*, that a Kentucky personal representative of a deceased person killed in Ohio was entitled to sue a foreign corporation in Kentucky for the alleged wrongful death of his decedent under the Ohio wrongful death statutes.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 36, 50.]

2. SAME—PUBLIC EXHIBITION GROUNDS—SAFETY—NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company, maintaining public exhibition grounds, for the wrongful death of a spectator, who had paid an admission fee, by being killed by a rotten limb falling from a tree, whether defendant was guilty of negligence in failing to discover and remove such defective limb *held* for the jury.

[Ed. Note.—Liabilities for injuries to persons at public entertainments or exhibitions, see note to Texas State Fair v. Brittain, 56 C. C. A. 502.]

John W. Woods and J. F. Stewart, for plaintiff.

John F. Hager, J. W. M. Stewart, Z. T. Vinson, and I. R. Johnson, for defendant.

COCHRAN, District Judge. The defendant has filed a motion for a new trial, and also for an arrest of judgment. I will dispose of the latter motion first.

The ground of it is that this is an action in Kentucky on the Ohio wrongful death statute, and that plaintiff, a Kentucky personal representative, had no right to bring it. The question as to the right of a foreign personal representative to sue on a wrongful death statute in the jurisdiction of his appointment has been much litigated in this country, and there is considerable conflict of opinion in the decisions. The earlier decisions were against the right; the later ones have, as a rule, been in favor of it. It will serve no good purpose to cite these cases and show their application to the question.

Looking at the matter solely from the standpoint of principle, I am of the opinion that the right of the foreign personal representative to maintain the action is dependent upon his right to maintain it in the jurisdiction of the statute. If he has not the right to maintain it there, then he has not the right to maintain it in his own jurisdiction in any contingency whatever. The converse of this, to wit, if he has a right to maintain it in the former jurisdiction, he has also the right to maintain it in the latter, is also true, but subject to two qualifications. One is, if he is prohibited by the statute of his own jurisdiction from bringing the action, then he cannot do so. The other is, if the machinery of procedure in

the jurisdiction of his appointment is not adequate to the enforcement of such right as he has in that of the statute, then he has no right to bring an action in the former jurisdiction. What is thus said of a wrongful death statute conferring a right of action on the personal representative of the decedent is true of every wrongful death statute. Whoever has any rights thereunder in the jurisdiction of the statute, and none other, has such rights as he has thereunder, and no more, in any other jurisdiction, provided there is no statute in the foreign jurisdiction prohibiting him from so having, and the machinery of procedure in such jurisdiction is adequate to the enforcement of such rights therein.

If this position is correct, it is entirely irrelevant to a determination of the question whether a foreign personal representative has a right of action on a wrongful death statute in the jurisdiction of his appointment what affirmative powers are conferred upon him in such jurisdiction by the statutes thereof. The statutes thereof could not confer upon him a right of action for a wrongful death caused in a foreign jurisdiction. For them so to do would be for them to have an extraterritorial effect, which they cannot have. And it is not necessary to rely on any such statutes for him to have a right of action in the jurisdiction of his appointment, if he has a right of action in the jurisdiction of the statute. For such right in the jurisdiction of the statute is sufficient basis in and of itself for his having a right of action in the jurisdiction of his appointment. To so hold is not to give the wrongful death statute an extraterritorial effect. The position is not that the foreign personal representative has a right of action in the jurisdiction of his appointment because the statute confers on him a right to bring an action there; but it is that he has a right to bring the action there simply because he has a right to bring it in the jurisdiction of the statute, and he has the right to bring it in such jurisdiction because the statute so provides and could lawfully so provide.

So much, then, from the standpoint of principle, as I look at it, as to the governing consideration in determining whether in any given case a foreign personal representative has a right of action on a wrongful death statute in the jurisdiction of his appointment. According to it, he cannot bring an action in such jurisdiction if he has no right to bring it in the jurisdiction of the statute. But there is very high authority—authority that is controlling upon me—to the effect that under some circumstances he can bring such an action although he has no right to bring it in the jurisdiction of the statute. I refer to the case of Stewart v. Baltimore & Ohio R. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537. That was an action for a wrongful death caused in Maryland, brought by a District of Columbia personal representative in the District of Columbia. The Maryland wrongful death statute did not confer the right of action on the personal representative, but upon the state for the benefit of certain named beneficiaries. It is certain that the District of Columbia personal representative could not have sued on that statute in Maryland. Yet the Supreme Court held unanimously (opinion by Mr. Justice Brewer) that the action could

be maintained. It would perhaps be presumptuous on my part to attempt a refutation of the correctness of this decision. It will certainly do no good; for, right or wrong, I am bound by it. But I cannot refrain from alluding to some considerations, that will have to be weighed in determining its correctness, which may be an aid to an elucidation of the real truth of the matter.

An action brought by a foreign personal representative on a wrongful death statute in the jurisdiction of his appointment gives rise to two questions. One is whether the right of action on the statute is transitory and enforceable by the right person in the foreign jurisdiction; the other is whether the foreign personal representative is the right person to enforce it in such jurisdiction. These two questions are separate and distinct. Each is dependent on a different consideration for its determination, and hence, in disposing of them, each should stand on its own bottom. Single-mindedness here, as everywhere else, is essential to seeing things as they are. The opinion of Mr. Justice Brewer impresses me with the notion that he confused these two questions, and passed from the one to the other without consciously recognizing that in so doing he passed from the one territory to the other. The result was that he disposed of the question whether plaintiff had a right of action on the Maryland statute under the bias and coloring influence of his view in regard to the question as to the transitoriness of the right of action on the Maryland statute by the right person, which was that the right of action was transitory. He seems to have thought that, if the plaintiff could not maintain the action, no action on the statute could be brought thereon in the District of Columbia, and hence in this way the transitoriness of the right of action created by the statute would be affected. It was not suggested or considered whether the action could have been brought in the District of Columbia by the state of Maryland for the benefit of the named beneficiaries, or, if this could not be done, whether it could not be brought in the name of the beneficiaries. Hence it would seem that he took too depreciatory view of the relation of the state or personal representative to a wrongful death statute which conferred the right of action on it or him for the benefit of certain named beneficiaries, and likewise of the office or function of the statute itself. He characterized such a plaintiff as a "nominal plaintiff." In view of this, it was not an unnatural thing for one to think that the jurisdiction of the federal courts in such a case depended on the requisite diversity of citizenship between the beneficiaries and defendant, and not between the personal representative and defendant. We find, therefore, that this position was shortly afterwards taken in two different cases, to wit: Cincinnati H. & D. R. Co. v. Thiebaud, 114 Fed. 918, 52 C. C. A. 538, and Bishop v. Boston & M. R. Co. (C. C.) 117 Fed. 771. It was held in both cases, however, that the position was not well taken, and the tendency of the case in this direction was thus curbed. In the Thiebaud Case Judge Severens said:

"We are unable to distinguish the case in this respect from those in which it has been repeatedly held by the federal courts that the trustee is the legal.

representative of the beneficiaries, and that his citizenship is the only one to be considered in determining the jurisdiction in respect to that side of the controversy."

In the Bishop Case, Judge Lowell, who seems not to have been aware of the Thiebaud Case, hesitated, on account of the Stewart Case, to hold as he did. He said:

"With considerable doubt I have determined to follow the practice of this court, which seems to be approved in Railroad Co. v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193, rather than the somewhat vague language of the Supreme Court in Stewart v. Railroad Co."

Likewise, as stated, a too depreciatory view of the office or function of the wrongful death statute seems also to have been taken. It is regarded as simply doing away with an obstacle to the enforcement of an existing cause of action caused by the death of the decedent. That obstacle is the maxim, "Actio personalis moritur cum persona." That maxim, however, has application only to cases where the decedent himself might have brought an action, not to cases where the basis of the action is the death of the decedent. In those cases no right of action passes from the decedent to his personal representative. There is a new right in favor of the personal representative, created by statute. The statute, therefore, does not remove an obstacle to the maintenance of a right of action already in existence. It creates a new right of action which had no existence before the death.

Again, several decisions of the Supreme Court before and since the Stewart Case seem to be against its correctness, according to the inferences to be drawn from them. In the case of Dennick v. Central R. Co., 103 U. S. 11, 26 L. Ed. 439, it was held that a New York personal representative had a right to bring an action in New York on the New Jersey wrongful death statute. The decision was expressly based upon the position that the statute provided that he might bring an action thereon. The reasonable inference therefrom is that if the statute had not so provided, and therefore he could not have sued in New Jersey, he had no right of action in New York. In the case of Northern Pacific R. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958, an action by a Minnesota personal representative in Minnesota on the Montana wrongful death statute, it was held that the limit of recovery prescribed by the Montana statute governed. This was approved in Slater v. Mexican Natl. R. Co., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900. Analogous to this is the holding in Railroad Co. v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193, that the time prescribed in a wrongful death statute within which an action may be brought on it controls in a suit on the statute in a foreign jurisdiction. If the statute is controlling as to damages and to time of bringing action in the foreign jurisdiction, the reasonable inference therefrom would seem to be that it is also controlling as to the person who should sue on it. Hence we find a number of decisions to the effect that, if the wrongful death statute confers the right of action on the beneficiaries directly, the personal representative cannot sue in the foreign jurisdiction, and vice versa. In the case of

Slater v. Mexican Nat. R. Co., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900, it was held that an action could not be maintained in Texas on the Mexican wrongful death statute, because that statute did not provide for the recovery of a lump sum, but in installments, like a pension or alimony, and the machinery of procedure in Texas was not adequate to give such relief. If the statute cannot be enforced in a foreign jurisdiction save in the manner it provides for payment of damages, it would seem to be reasonable to infer that it cannot be enforced there by any other than whom it says may enforce it. Mr. Justice Holmes, in his opinion, says that the wrongful act is not subject to the law of the forum "with regard either to its quality or its consequences," and that the law of the place of the act "determines not merely the existence of the obligation, but its extent." Is not the person who may sue a part of the consequences of the act and of the extent of the obligation?

These several considerations cause me to doubt the correctness of the decision in the Stewart Case. Others also have not been entirely satisfied with it. Judge Lowell, in the quotation from his opinion in the Bishop Case, made above, refers to its language as vague. In the case of Sanbo v. Union Pac. Coal Co. (C. C.) 130 Fed. 52, Judge Hallett said that he did not know of any decisions amongst those he had seen, which had been quite numerous, that "go so far as this case"—in the direction of holding that the beneficiaries might possibly, under some circumstances, bring an action without a personal representative as plaintiff. Minor on Conflict of Laws, p. 477, note 1, says that, if the division of torts adopted in the Stewart Case is recognized generally, the whole basis upon which the principles of private international law touching torts now rests would probably be revolutionized. But the decision has never been disapproved, much less overruled. I therefore consider myself bound by it. There was greater difference in the wrongful death statutes of the two jurisdictions involved in that case than in the two involved herein. The Maryland statute provided that the action should be brought by the state, and the amount recovered should be apportioned amongst the beneficiaries by the jury. The District of Columbia statute provided that the action should be brought by the personal representative, and the amount recovered should be distributed according to the laws of the distribution of a decedent's estate. Here the statutes of both Ohio and Kentucky provide that the action shall be brought by the personal representative, and under each the recovery is for the benefit of the two infant children of the decedent. If, then, the personal representative could recover in the Stewart Case, when he could not have sued in Maryland, ought not plaintiff have a right to sue here, even though he could not have sued in Ohio?

But I am not content to let the matter rest here. I think that plaintiff had a right to have brought his suit in Ohio, and that the courts of that state would have permitted him to sue therein. The wrongful death statute of Ohio confers the right of action on the personal representative. It is not limited to a domestic personal representative. It is contained in sections 6134 and 6135, Bates' Ann.

St. Ohio. In the last sentence of section 6135 provision is made for a settlement of the case after suit is brought. This provision is made conditional. That condition is, "if he [personal representative] was appointed in this state." This seems to imply that, under the right of action conferred by the preceding part of the section, a personal representative who was not appointed in Ohio might bring the action. But, however this may be, it is expressly provided by section 6133 that "any executor or administrator duly appointed in any other state or country may commence and prosecute any action or proceeding in any court in this state in his capacity of executor or administrator in like manner and under like restrictions as a non resident may be permitted to sue." In view of this broad provision, what ground is there for limiting the wrongful death statute, in so far as it confers the right of action on the personal representative generally, i. e., without any limitation whatever, to a domestic personal representative? In the case of Southwestern R. Co. v. Paulk, 24 Ga. 356, it was held that a foreign personal representative could not sue in Georgia on the Georgia wrongful death statute, because the statutory provision of that state empowering foreign personal representatives to sue in that state did not cover the case in hand. This is a decision to the effect that such statutory provision must be broad enough to cover an action on the wrongful death statute in order for a foreign personal representative to have a right of action thereon. In the case of Maysville S. R. & T. Co. v. Marvin, 59 Fed. 91, 8 C. C. A. 21, it was held that a foreign personal representative could not sue in this state on section 1, c. 57, Gen. St., one of the then existing wrongful death statutes of Kentucky, because the statutory provision empowering foreign personal representatives to sue thereon was not broad enough to cover an action on said statute. That provision authorized him conditionally to sue herein to recover debts due the decedent. A cause of action on said statute was not a debt, and it was not due the decedent. Hence said provision was not broad enough to cover an action on the statute. The recovery on that statute, however, was an asset, and was therefore liable to payment of debts. The condition on which foreign personal representatives were permitted to sue and recover debts due the decedent was the execution of a bond to secure Kentucky creditors. The argument was that the language of the wrongful death statute conferring the right of action on the personal representative generally could not have been intended to include foreign personal representatives, for such a construction would permit them to remove this particular kind of assets without first securing home creditors, when ordinary debts due decedent could not be recovered without securing such creditors. It was not involved therein whether, if the recovery had been for the benefit of widow and children and other next of kin, the general language of the wrongful death statute would not itself be sufficient to confer the right of action on the personal representative, notwithstanding the other statute was not broad enough to cover an action on the statute. In the cases of Kansas Pac. R. Co. v. Cutter, 16 Kan. 568, and Dennick

v. Central R. Co., 103 U. S. 11, 26 L. Ed. 439, it was held that the general language of the wrongful death statute itself was sufficient to take in a foreign personal representative, without more. It so happened, however, that in both cases the statutory provision empowering foreign personal representatives to sue in the jurisdiction of the statute was broad enough to cover an action on that statute. The action in one case was by a Colorado personal representative, on the Kansas wrongful death statute, brought in Kansas. In the other case it was by a New York personal representative, on the New Jersey wrongful death statute, brought in New York. The Cutler Case was subsequently qualified by the case of Limekiller v. Hannibal, etc., R. Co., 33 Kan. 83, 5 Pac. 401, 52 Am. Rep. 523, where it was held that, if the foreign personal representative had no right of action in the jurisdiction of his appointment on the wrongful death statute thereof, he could not sue on the statute out of which the obligation sought to be enforced arose. In this case, however, the statute of Ohio empowering foreign personal representatives to sue therein is broad enough to cover an action on the wrongful death statute. The general language of that statute, therefore, should be held broad enough to include a foreign personal representative. An authority to this effect, in addition to the Cutler and Dennick Cases, is the case of Jeffersonville R. Co. v. Hendricks, 41 Ind. 49.

But it is urged by defendant's counsel that it has been held by the Supreme Court of Ohio that a foreign personal representative cannot sue on the wrongful death statute of that state. Of course, if this is true, this construction of that statute is binding upon us. The case relied on is Woodard v. M. S. & N. I. R. Co., 10 Ohio St. 121. This case, however, did not involve a construction of the Ohio statute, much less did it involve the question whether a foreign personal representative could sue on the Ohio wrongful death statute in Ohio. It was an action in Ohio by an Ohio personal representative on the Illinois wrongful death statute. It is true that it is said in the statement of facts preceding the opinion that the Illinois wrongful death statute and foreign personal representative statute were both very similar to the like statutes of Ohio, and there is a basis, therefore, for claiming that the decision is an indirect construction of the Ohio statutes. It is certainly no more. But this decision was rendered before the Civil War, when wrongful death litigation was in its infancy. It is the pioneer case involving the question involved herein. The court was not at the proper standpoint in which to construe the Illinois statute correctly. The standpoint from which one views a thing often makes a very great difference whether he sees correctly. The proper standpoint from which to have construed the Illinois statutes was from the bench of an Illinois court, just as here the proper standpoint from which to construe the Ohio statute is from the bench of an Ohio court. The Ohio Supreme Court construed the Illinois statutes from its own bench. The danger in so doing was that it would think that the only way in which plaintiff's action

could be sustained would be by giving the Illinois wrongful death statute an extraterritorial effect, which could not be done lawfully. And the opinion shows that the court did so think. The real ground of the opinion is that, inasmuch as the Illinois statute could not lawfully impose a duty or trust on an Ohio personal representative, it did not intend to do so. The court did not consider whether the Illinois statute should be construed as giving the Ohio personal representative a right of action in Illinois, and, because it did so, whether he should not be permitted to bring an action in Ohio. Had the case before it been an action on the Ohio wrongful death statute by a Kentucky personal representative, it cannot be said from this opinion that it would have been held that the action could not be maintained. Judge Thompson had just such a case before him in the case of Popp v. Cincinnati & C. R. Co. (C. C.) 96 Fed. 465, save that plaintiff was an Indiana personal representative, and it was held that he had a right to bring the action. Indeed, defendant's Ohio counsel expressly concedes that plaintiff could have brought an action in the state of Ohio to recover damages for the death of his intestate. He directs attention to the fact that in the Dennick Case it was held that the New York personal representative might bring an action on the New Jersey wrongful death statute, and that the right so to do was not limited, as the lower court had held, to a New Jersey personal representative. He then adds:

"We have never questioned this proposition, and don't now. The administrator appointed in Kentucky can bring suit in Ohio upon this same cause of action."

If this is so, then why can he not maintain this action in Kentucky? The only possible ground for his not having the right to do so is that the cause of action is not transitory. But as to that, there can be no question. In the Dennick Case it was held not only that the New York personal representative had a right of action on the New Jersey wrongful death statute, but he had a right to bring his action in New York, and hence that the cause of action was transitory. There was a time, perhaps, when it was an open question whether the cause of action on a wrongful death statute was transitory, and it was held in some jurisdictions that, in order for it to be so, it was essential that there be a substantially similar statute in the foreign jurisdiction. In Ohio the decision in the Woodard Case, which was really based upon the proposition that an Ohio personal representative had no right of action on the Illinois wrongful death statute, seems to have been treated as holding that a right of action on a wrongful death statute of a foreign jurisdiction was not transitory and enforceable in Ohio unless there was an express statute in that state permitting its enforcement there. It would seem that it was upon such idea that section 6134a of Bates' Annotated Statutes of Ohio was passed, which provides that a right to maintain an action and recover damages for a death caused by wrongful act, neglect, or default in another state, territory, or foreign country, given by a statute thereof, may be enforced in Ohio "in all cases where such other state, territory or

foreign country allows enforcement in its courts of the statute of this state of the like character, but in no case shall the damages exceed the amount authorized to be recovered for a wrongful neglect or default in this state causing death." But I think it safe to say that in no jurisdiction where it is an open matter would it now be held that the cause of action is not transitory, or that it is essential that there be a substantially similar statute in the foreign jurisdiction in which the wrongful death statute is sought to be enforced in order to the enforcement there. The correct rule on the subject is thus stated by Minor on Conflict of Laws, p. 492:

"The present tendency of the more recent decisions is to advance still further towards liberality, and to throw open the courts to litigants whose cause of action has arisen in other states and under the laws thereof, even though not actionable at common law, or not actionable if it had arisen in the forum, provided the enforcement of the lex delicti would not seriously contravene the established policy of the forum. The presumption is in favor of the right to sue, and the burden rests upon the party objecting to show that the enforcement of the 'proper law' would be inconsistent with the domestic policy."

This is the federal position, as evinced by the Dennick and subsequent cases decided by the Supreme Court. Under it, it seems to me that the only limitations upon the right to sue in the foreign jurisdiction is the existence of a statute in such jurisdiction prohibiting it, or the absence there of adequate machinery of procedure. The fact that Ohio has a different rule has no relevancy to this case. This is not a suit in Ohio on a foreign wrongful death statute. It is a suit in Kentucky on the Ohio statute. There is no statute in this state prohibiting such a suit. Its machinery of procedure is adequate to the enforcement of the right. If then, as is thus conceded, plaintiff had a right to have brought an action in Ohio, there is no possible reason for his not having a right to bring this action.

Counsel for defendant suggest as a reason why plaintiff should not be allowed to maintain this action that it is liable to another action by an Ohio personal representative. I do not think there is any such liability. If the plaintiff had brought this action in Ohio, it could not be claimed that thereafter another action could have been maintained against him there by a domestic personal representative. The fact that he has brought it in Kentucky can make no difference. Counsel for defendant rely on the case of Sanbo v. Union Pac. Coal Co. (C. C.) 130 Fed. 52. That was an action in Colorado by a Colorado personal representative on the Wyoming wrongful death statute. It was held that the action could not be maintained. The ground upon which it was so held was that under the Wyoming statute the amount recovered was a fund to pay debts. It was conceded that, if the statute had been like the Ohio statute, the action could have been maintained.

My conclusion, therefore, is that under the Ohio statute plaintiff had a right to have brought his action in Ohio, and, having that right, he had a right to bring it in Kentucky, irrespective of the Stewart Case.

The motion for arrest of judgment is therefore overruled.

Then, as to the motion for new trial. The main ground relied on is the refusal to give a peremptory instruction to the jury to find for the defendant at the close of all the evidence. It is urged that the defendant was entitled to such an instruction, because the cause of action was not transitory and enforceable in Kentucky. I have disposed of this contention in what I have had to say on the preceding motion. Then it is urged that the evidence was not sufficient to entitle plaintiff to have the cause submitted to the jury. The nature of the case was this: The defendant, on Labor Day in September, 1902, and for some time prior thereto, owned and was managing Beechwood Park, in or near the city of Ironton, Ohio. On that day the laboring men had a celebration in the park, to which the public were invited. The decedent, as one of the public, attended this gathering, and paid for admission, as did the rest, the receipts going to defendant. Whilst sitting under a black gum tree listening to the speakers at the band stand, and when hardly a breath of air was stirring, a large branch separated from the main body of the tree at its connection therewith and fell, striking her on the head and killing her instantly. The petition charged that the branch was dead, unsound, and rotten on top at and near its connection with the main body of the tree where it gave way, that this defective condition was patent and knowable by the defendant by the exercise of ordinary care, that it carelessly and negligently allowed the branch to remain upon said tree and failed to remove it, and that by reason thereof the injury complained of was occasioned.

As to the claim that the branch was dead, unsound, and rotten on top at and near the connection with the main body of the tree where it gave way, I think there was evidence tending to show that such was the case; at least, sufficient to justify the jury in passing upon the question. There was likewise evidence tending to show that it was patent to one who might have climbed the tree for the purpose of examining it and seeing if it were safe. The evidence did not warrant the conclusion that it was patent to one examining the tree from the ground, and I so told the jury. The claim, then, that it was knowable by the defendant by the exercise of ordinary care, and that it negligently failed to remove it, depended upon whether a person of ordinary prudence, with such knowledge as he would have from an inspection of the tree from the ground—it is not denied that ordinary care required an examination of the tree from the ground—would not have climbed the tree for the purpose of making a more careful examination of this branch, would have discovered the defective condition of the branch by making such examination, and with such knowledge would have removed the branch and thereby have prevented the injury. I think that the evidence was such as to demand a submission of these questions to the jury for their determination. The evidence showed clearly that the tree was a large old tree; that it leaned towards the band stand somewhat; that the branch in question was 30 or 40 feet up in the

air, was a large one, being as much as 13 inches in diameter at its connection with the tree, and extended out almost horizontally from the tree for a distance of about 30 feet over the place where persons would be standing or sitting listening to the speaking from or exercises being carried on at the band stand; that a portion of the outer end had been broken off, and for a distance of one or two feet the outer end as left was dead, and that through the lap of the branch there were dead limbs. Then one witness testified, if I remember correctly, that there was a snag of a branch somewhere on the body of the tree from which a branch had formerly broken. Besides, there was the testimony of Baldwin, and perhaps two or three others, to the effect that a point some five or six feet from the body of the tree the branch in question had a swelled appearance, and a hole or defective place near the top that was apparent to one examining the branch from the ground. It is true that this testimony was contradicted by other witnesses, and that its value was affected by their further testimony that it was at this point the branch gave way, which is against the decided weight of the testimony; but still it was for the jury to say whether this defective condition was there or not, and, if so, to determine whether it would have any effect on the course of action of a person of ordinary prudence. On the other hand, the evidence was quite strong to the effect that apparently the branch was sound otherwise than as above stated. The bark and sap on the outside all around, except as to the place on top at and near the connection of the branch with the main body of the tree, was green, and the limbs and foliage constituting the lap of the branch was pretty generally green. But in view of all the evidence, I think there was room for difference of opinion amongst fair-minded men as to whether a person of ordinary prudence would not have climbed the tree to make a closer examination as to the safety of the branch, and would not have discovered the defective condition on top of the branch at and near its connection with the body, and removed the branch had he done so. This is a case where it seems to me that the following remarks of Mr. Justice Lamar, in the case of Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, are particularly appropriate, to wit:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in the case was such as would be expected of reasonably prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reason-

able men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

These questions have been submitted to two juries composed of intelligent and fair-minded men, and in each instance they have found against the defendant, and I think the last verdict should be allowed to stand.

The motion for new trial is overruled.