GULF & CHICAGO RAILROAD COMPANY *v.* ARABELLA B. SNEED.

1. RAILROADS. *Highway crossing. Code* 1892, § 3555. *Grades.*

Under Code 1892, § 3555, requiring a railroad company, where its track crosses a highway, to make a convenient crossing and keep it in good order, the grade in the highway required depends upon the extent to which the railroad track is above or below the natural surface of the ground.

2. SAME. *Injuries to traveler.*

Under said section a railroad company is not liable for an injury to a traveler resulting from a defect in the highway beyond the crossing, although the highway where defective be on its right of way.

3. SAME. *Proximate and remote cause.*

Where a horse becomes frightened at an object lying in the highway, and the driver, in undertaking to force the animal past the object, causes it to back the vehicle into a gully at the side of the highway, thereby injuring the occupants of the vehicle, the condition of the highway is not the proximate cause of the injury.

FROM the circuit court of Pontotoc county.

HON. EUGENE O. SYKES, Judge.

Mrs. Sneed, the appellee, was plaintiff, and the railroad company, appellant, defendant in the court below. From a

judgment for $750 in plaintiff's favor the defendant appealed to the supreme court. The facts are stated and the code section involved quoted in the opinion of the court.

*John W. T. Falkner, Fontaine & Fontaine,* and *Mayes & Longstreet,* for appellant.

The court will observe that the point at which the mishap, of which the plaintiff below complains occurred, was on the public road fifty-five measured feet south of the point where the railroad crosses the public road. The public road at this point was neither a part of the railroad crossing nor a part of the approach to such crossing, which, under § 3555, Code 1892, the railroad company was under obligation to maintain in safe condition.

To illustrate this, we will suppose that the public road, ditch, and railroad should be just as they are, but that as a matter of fact no railroad crossing was at Morphis Crossing, or near that point, and that the public road, after it reached the level at the top of the hill, bore away from the railroad to the east, never crossing it. Could a recovery be had then, because Sneed's horse frightened at a bush in the public road, and, rebelling against the whipping its master gave it, backed them off the public road into a ditch?

It will be apparent to the court, in the next place, that the mishap which occurred was due to the negligence and careless and ill-considered conduct on the part of Mr. and Mrs. Sneed. It will be remembered by the court that after the parties had safely crossed the railroad crossing, and had gone some distance from it down the road, the horse they were driving took fright at a bush in the public road, refused to pass it, and stopped short. Thereupon Mr. Sneed attempted to force the mare on and over the object by whipping her with the lines. The mare, ordinarily gentle, but now thoroughly frightened, refused to be forced by the object of terror, and

began to back, backing the buggy and its occupants into the ditch.

The instructions granted to plaintiff are erroneous, because all of them assume as a fact that the place at which the accident occurred was a part of the crossing.

In some aspects the case at bar presents an instance of pure accident, for which the railroad company was in no wise responsible. The case, in many of its features, falls within the rule very clearly stated, 21 Am. & Eng. Ency. Law [2d ed.], 497, which is supported by many authorities from the states of Delaware, Indiana, Illinois, Iowa, Massachusetts, Arkansas, California, Louisiana, Missouri, New Hampshire, Ohio, Pennsylvania, and Texas. The rule is stated in the text as follows:

"According to the view of some cases, any occurrence which the defendant did not cause and over which he had no control, and which he could not have anticipated, is an inevitable accident as to a defendant charged with negligence, while others use the term *omena,* or as practically synonymous with 'act of God.' In whichever sense the term is employed, the rule is believed to be general that where the defendant's act or omission caused injury only by the concurrence of an inevitable accident, which could not have been foreseen, he is not liable."

*Mitchell & Fletcher,* for appellee.

When a railroad company crosses a highway, it must erect whatever structures are necessary to the convenience and safety of the crossing. Such duty is a continuing one without any express statutory requirement. 3 Rapalje & Mack's Digest, 428 (19) ; 4 Rapalje & Mack's Digest, 380 (7).

For a full discussion of this question, see 15 Am. & Eng. Ency. Law [2d ed.], 455, *et seq.* We cite the court's attention to a case decided in Michigan, where there is a statute quite similar to ours, a statute which requires the road to be kept in a good and safe condition without specific mention of barriers or guard rails, and in which the court held that it was for the

jury to say whether safeguards were necessary. *Malloy* v. *Township of Walker,* 6 L. R. A., 695, and the copious collection of cases in the notes.

Again, where there was established a narrow road from ten to twelve feet wide, along a hillside, upon the lower side of which there was an almost perpendicular declivity of some nine feet and a steep slope from there on, the question of negligence of the township in failing to provide a barrier is for the jury. *Wilson* v. *O'Harra Twp.,* 14 Pa. Sup. Ct., 258; *Sharp* v. *Evergreen Twp.,* 67 Mich., 443; *Hinckley* v. *Somerset,* 145 Mass., 326; *Plymouth Twp.* v. *Graver,* 125 Pa., 24; *Olsen* v. *Chippewa Falls,* 71 Wis., 558; *Maxim* v. *Champion,* 50 Hun., 88; *Byerly* v. *Anamosa,* 79 Iowa, 204; *Schuenke* v. *Pine River,* 84 Wis., 669; *Lane* v. *Hancock,* 67 Hun., 623; *Glaub* v. *Goshen,* 7 Kulp, 292; *Wood* v. *Gilboa,* 76 Hun., 175; *Murphysboro* v. *Woolsey,* 47 Ill. (App., 447); *Merriam* v. *Phillipsburg,* 158 Pa., 78; *Burns* v. *Yonkers,* 83 Hun., 211; *Wellman* v. *Susquehanna Depot,* 167 Pa., 239.

The plea of contributory negligence in this case depends entirely for support upon the fact that when the horse of appellee's husband hesitated at sight of the bush in the road, the driver urged the animal to go forward and struck it gently with the lines to urge it on. There is no conflict in the testimony that the horse was a reasonably safe and gentle animal, whatever may be the assertion in the special plea. The only witness upon this point is A. B. Sneed, and his testimony is clear. Now aside from the fact that the negligence of appellee's husband could not be attributed to appellee, there can be no contributory negligence on the part of anybody. It was clearly the duty of the driver to pass on and over the obstacle. As he says, there was no room to pass around it, and certainly no room to turn around. He could not have possibly anticipated the unfortunate decision of the horse to back, its former gentleness having given him no warning of such a disposition on its part. The means he used were mild and prudent

ones.   He neither whipped nor jerked the horse, merely urged it forward with the lines.   No other course was open to him, and his conduct not even hints at negligence.   But even if he erred in judgment in the face of a perilous crisis, he would be excused.   *Goodrich* v. *N. Y. Cent. & H. R. R. Co.,* 26 N. Y. St. Rep., 767; *Harris* v. *Clinton Twp.,* 64 Mich., 447; *Hawkins* v. *Johnson,* 105 Ind., 29; *Ladd* v. *Foster,* 31 Fed. Rep., 827; *Lawrence* v. *Green,* 70 Cal., 417; *L. N. A. & Chi. R. Co.* v. *Lucas et al.,* 6 L. R. A., 193.

TRULY, J., delivered the opinion of the court.

Appellee, in company with her husband, driving on a public highway in a buggy drawn by a single horse, crossed the railroad track of appellant where it maintained a crossing over the highway.   A short distance beyond the railroad track, which at this place traversed the highway on the crest of a small hill, the highway, in the direction in which appellee was traveling, turned to the right and ran down a declivity for an indefinitely stated distance, approximately parallel with and near to the railroad track.   At the place of the injury complained of, some fifty-five feet from the point where the highway crossed the roadbed, but, on account of the curve in the highway, only a few feet from the roadbed, the highway ran near the foot of the railroad embankment, while on the other side there had been washed by the action of the water a gully, variously estimated as being from ten to twenty feet in depth. The story of the accident, as told in the language of Mr. Sneed, the husband of appellee, who was driving the buggy, is as follows: "I was driving along as usual, just driving off the railroad, and just in a few feet below my horse saw a bush lying in the road, and my mare scared at that and would not go on, and I undertook to make her go on, and she backed back and threw us in the gully."   From this accident appellee suffered several severe contusions, and for this brought suit, averring that the accident was caused by the negligence of the appellant

in not complying with § 3555, Code 1892, and that this failure on the part of appellant was the proximate cause of the injury which she suffered. From a judgment in her favor the railroad company appeals.

Sec. 3555, so far as pertains to this question, is as follows: "Where a railroad is constructed so as to cross a highway, and it be necessary to raise or lower the highway, it shall be the duty of the railroad company to make proper and easy grades in the highway so that the railroad may be conveniently crossed, and to keep such crossing in good order." The wording of this section explicitly states the duty imposed upon railroad companies crossing public highways in this state. That duty is as follows: In order that public travel may not be interfered with, nor the rights and privileges of the public in any wise curtailed, the railroad company is required to make such necessary and easy grades as will permit safe and convenient passage over its roadbed. The grade required depends, of course, upon the extent to which it has been found necessary to raise or lower the natural surface of the ground to make the crossing accord with the established grade of the railroad. Whether such grades are to be slight or great varies at each crossing with the natural obstacles which may be presented by the particular location. It is further the duty of the railroad company to see that the crossing is in such condition that the highway can be safely and conveniently used by the traveling public generally. This is the extent of the duty imposed upon railroad companies by the statute under review. The reason of the statute, the object which the legislature had in view, was evidently this: As railroad companies must necessarily, in constructing their lines, traverse numerous public highways, and as they have the power, in order to facilitate their operation, to arbitrarily establish such grade as the topography of the country traversed by their railway may demand, and as this grade can be raised or lowered at the pleasure of the railroad company without consultation with the public or the road over-

seer, it was decided, and wisely so, that the railroad companies should themselves bear the burden of making such changes in the highway, where traversed, as might be found necessary, so that the rights of the public in the use of the highway, as such, should not be interfered with or infringed upon. Railroad companies are not required to construct or to maintain the public highways of the county, other than where interfered with by the construction of their roadbeds, and to perform the grading required for a convenient approach to such crossing. In the instant case, under the undisputed testimony in this record, appellee received her injury, not on the crossing, nor by reason of the condition of the crossing, nor on any grade constructed by appellant, but after the railroad had been safely passed and the buggy was again traveling over the public highway, the duty to maintain which is by statute placed upon the road overseer and hands, and under the supervision of the board of supervisors. For this reason the instructions for appellee were erroneous, in that they assumed as a matter of fact that the injury occurred upon that portion of the highway which it was the duty of the appellant to maintain in good order.

Nor, under the circumstances of this case, would appellee be entitled to recover, even though the accident had occurred on what might properly be considered as a part of the railroad crossing. The portion of the road at which the accident occurred was reasonably safe for the passage of the traveling public, and the exact spot had in fact already been passed in safety by appellee when the action of her horse, frightened by an object in the road, backed the buggy off the traveled road and into the gully, which was outside of the roadway. Under these circumstances the proximate cause of the injury was not the existence of the gully outside of the traveled roadway. The injury was directly contributed to by the action of the driver in undertaking, situate as he was, with an embankment on the one side of a narrow roadway and a deep gully on the other, to force an obviously frightened animal to

pass over the object of her terror. Conceding that the railroad company was under the duty to maintain in good order the highway at the scene of the accident, it was not responsible for the object in the road, nor for the consequent fright of the animal, nor for the negligent act of the driver, and these were the proximate cause of the injury. Under these circumstances, no judgment in favor of appellee could rightfully be sustained.

*Reversed and remanded.*