## PENNSYLVANIA R. CO. v. STOCKTON.

(Circuit Court of Appeals, Third Circuit. January 19, 1911.)

No. 39.

1. CARRIERS (§ 318*)—INJURIES TO PASSENGERS—STARTING TRAIN AT STATION WITHOUT WARNING.

In an action for injury to a passenger when attempting to board a railroad train at a station, negligence may fairly be inferred by the jury from the starting of the train without warning when a large number of passengers were attempting to enter.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1313; Dec. Dig. § 318.*]

2. CARRIERS (§ 286*)—RAILROADS—DUTY OF CARE TO PASSENGERS AWAITING TRAIN.

A railroad company is under obligation to take due care to secure the safety of a passenger who is on its platform to board its train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1142, 1152; Dec. Dig. § 286.*]

3. CARRIERS (§ 320*)—RAILROADS—ACTION FOR INJURY TO PASSENGER IN BOARDING TRAIN—NEGLIGENCE.

Plaintiff's intestate was killed when attempting to board a train on defendant's railroad at Newark, N. J., by being pushed against or under the moving cars by the crowd which was waiting for the train. It was Saturday afternoon at the height of the season for week-end summer travel to the seaside, where the train was bound, and there were 800 or 900 persons on the platform and nearly 200 who sought to board this particular train, which was 10 minutes late. Such crowd, however, was not exceptional for the time, day, and season. There were no gates, and there was testimony that there was no one representing defendant on the platform when the train came in. *Held*, that the question of de-

fendant's negligence in failing to have adequate arrangements to control the crowd and protect the passengers from injury was properly submitted to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1167; Dec. Dig. § 320.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action at law by Richard Stockton, administrator of William L. Stockton, deceased, against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 182 Fed. 282.

Vredenburgh, Wall & Carey, for Pennsylvania R. Co.

Frank S. Katzenbach, Jr., for Stockton.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Richard Stockton, a citizen of New Jersey, and administrator c. t. a. of Wm. L. Stockton, deceased, recovered a verdict against the Pennsylvania Railroad Company, a corporation of Pennsylvania, for damages for its alleged negligence in causing his decedent's death. On entry of judgment thereon the railroad sued out this writ.

The case concerns the duty of a railroad to a passenger about to board a train at a station. The testimony on behalf of the plaintiff tended to show that Mr. Stockton, having purchased a ticket on defendant's road to Mantaloking, a New Jersey seaside resort, went to the platform of its Market Street Station in Newark, N. J., to await the arrival of his train. It was about 4 o'clock on Saturday afternoon in the height of the season of week-end, excursion summer travel. There was proof there were 800 or 900 persons on the platform, some 195 of whom, or enough to fill three cars, desired to board the Mantaloking train. One witness said the crowd reached from the tracks back to the station door, and that it was so dense he was unable to get out at one of the doors. Another witness said:

"When I had bought my ticket, I walked upstairs and went out on the platform; but there was a big crowd there right back to the doors, and I managed to squeeze out, and I squeezed around the edge of the crowd. Then I went along down the rickety zigzag fence that comes in and goes down. Crowds of people were crowded around down back in there. * * * Everybody was pushing. It was a very hot day. I skirted the crowd and got around where the platform was narrow."

Another witness, without objection, said:

"The platform station at that time was thronged with people. There was a crowd. It seemed to me at that time that the station was insufficiently protected; that is to say, that, for a mass of people that was there attempting to take the train, it seemed to me that the protection of the public was very limited, because there was a crowd there without any restraint on them whatever. The train rolled into the station, and instantly the crowd surged toward the train. There was no railroad official around there at that time."

The train in question was ten minutes late, and the evidence on the part of the railroad was that Mr. Stockton was pushed under the

train by the crowd as the train ran into the station and before it came to a stop. The very decided weight of the proof, however, was with the plaintiff that the train came to a full stop, and the crowd then pushed to enter. Whereupon, the train was, without signal, moved forward, and it was then that Mr. Stockton, while attempting to get upon it, was pushed under. A witness thus described his own and Mr. Stockton's actions as the train approached:

"Our position was about six feet from the tracks on the platform. There was a big crowd of people there. But we were not closer than six feet from the rails; from the edge of the platform, in other words. The train was late, and it came in with a rush, came in very fast. The train stopped, and everybody commenced to push forward to get on the train. Mr. Stockton was a little ahead of me. He started to get on. The train started to go ahead again. I think it moved 20 or 25 feet after it came to a stop; but meanwhile Mr. Stockton was pushed under the train, and his left foot was cut off by the first truck."

The case was submitted on two counts, one charging negligence in starting the train, whereby Mr. Stockton was killed while trying to get aboard; the other, negligence in not controlling the crowd and taking proper precautions for decedent's safety. The court submitted the case to the jury on both counts, and, as the verdict was general and may be attributed to either, the question arises whether there was error in submitting both to the jury.

We have no difficulty in justifying the verdict under the first count, for, from the starting of the train without warning when a crowd of passengers was attempting to enter, negligence might be inferred. Kulman v. Erie R. Co., 65 N. J. Law, 243, 47 Atl. 497.

The crucial question is as to the other count. Assuming that Mr. Stockton was pushed under or against the approaching train before it stopped, was there evidence of negligence on the part of the railroad to submit to the jury? No contention is made that the station platform was inadequate. Indeed, a count charging negligence in that regard was abandoned; but the question is as to the alleged failure of the railroad to control its use. The obligation of a railway to take due care to secure the safety of a passenger who is on its platform to board its train is generally recognized. McGearty v. Manhattan Railroad Company, 77 N. Y. St. Rep. 1086, 15 App. Div. 2, 43 N. Y. Supp. 1086; Buck v. Manhattan Railroad Co., 15 Daly (N. Y.) 48, 2 N. Y. Supp. 718. It has been so held in New Jersey, in Exton v. Central R. R. Co., 62 N. J. Law, 15, 42 Atl. 489, and the general principle there established that:

"Carriers of passengers are bound to exercise the utmost care in maintaining order and guarding those they transport against violence from whatever source arising, which might be reasonably anticipated or naturally expected to occur. Flint v. Norwich Transportation Company, 34 Conn. 554 [Fed. Cas. No. 4,873]. * * * The general rule is clear that from whatever source the danger may arise, if it be known or should have been known, care must be exercised to protect the passenger from that danger."

Now the situation at this station was not an unusual one, or one which the railroad company had no reason to anticipate. The principle, therefore, of such cases as Cannon v. Midland, L. R., vol. 6, Ireland, 205, and Pittsburgh, etc., Co. v. Hinds, 53 Pa. 512, 91 Am.

Dec. 224, which are urged to control this case, are not here applicable. There the situation was unusual and not to be expected; here it was in no way out of the ordinary. The crowd was not exceptional for such a day, hour, and season. Indeed, the railroad itself showed the situation that day was one to be expected. Thus one of the incoming trainmen, in answer to the question whether there was "anything out of the ordinary with the persons who were waiting there to get on the train," said:

"Nothing more than the Saturday afternoon travel, a few more than the week-day travel; that was all."

Mr. Kramer, a Newark business man, called as a witness by the railroad, in speaking of the crowd, said:

"On the afternoon of August 1st, about 4 o'clock, I reached the depot and found the usual large afternoon crowd there, * * * and, as is usually customary on days of this kind, the crowd surged forward, kept walking along with this train as it was moving forward."

The engineer of the incoming train, in answer to the question whether he noticed anything unusual about the crowd, said:

"No, not any more than any other Saturday. Of course, Saturday is a little busy at that time of the year at the seashore."

And the station master said it was "just the ordinary summer travel, Saturday travel."

Seeing, then, that the situation was not out of the ordinary, and that the railroad was not confronted by any extraordinary conditions, what was its duty with reference to this crowd awaiting this incoming, belated train?

There was no doubt such a crowd called for oversight and control to prevent danger from the train. The conductor, Neill, testified:

"They seemed to be very impatient; made a rush for the train."

That was to be expected. Indeed, the railroad proved by the station master that his duty was "to see that, if confusion arises, the people are handled properly." Presumably a fair proportion of the 33 persons who made up the station master's night and day force were at his command. There was also a policeman on duty, who was paid by the railroad; but he was downstairs in the waiting room at the time, and the testimony on behalf of the plaintiff was that no official of the railroad was on the platform when the train came in. Under the facts proven in this case—the size of the crowd, the absence of gates, the lateness of the train, the number of the passengers boarding it, and the absence of any officials whatever to safeguard such a surging throng of people, selfishly intent, as experience shows such a crowd is, to board the cars and get seats and apt to move forward by common impulse as a train, and especially a late one, approaches—all these are facts from which a fair-minded man might infer that the railroad had failed to exercise that supervising control over a large, inconsiderate crowd, which a due regard for the safety of passengers demanded; for, as said in Cannon v. Midland, supra:

"When a railway company, for an excursion or other special purpose, invites numbers to its station, it is not unreasonable to require more than the ordinary attendants to perform the same duties which devolve upon the usual staff at other times."

We are therefore of opinion the court, under these proofs, was bound to submit them to the jury on the question of negligence under the first count. The crowd was not extraordinary. It was one from which, uncontrolled, an accident might result, and the railroad, although equipped to control it and proving it was its duty to handle the crowd properly, simply left it to take care of itself. Under this situation a jury might fairly infer that absence of any care was a lack of due care, and negligence is the lack of due care under the circumstances. In the light of these facts, we think the court below would have been in error in withdrawing the second count from the jury.

The judgment of the court below is therefore affirmed.