## HARMON v. FLINTHAM.

(Circuit Court of Appeals, Sixth Circuit.    May 7, 1912.)

No. 2,182.

1. TRIAL (§ 420*)—OVERRULING OF MOTION FOR DIRECTED VERDICT—WAIVER OF ERROR.

A defendant waives error, if any, in the overruling of a motion for directed verdict made at the close of plaintiff's case by introducing evidence in his own behalf.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. CARRIERS (§ 287*)—RAILROADS—CARE AT STATIONS—EXCURSIONS.

The duty rests upon a railroad company which has attracted an unusual number of people to a station by advertising an excursion to furnish greater facilities than usual to accommodate, care for, and protect those who avail themselves of its offer.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1154–1159, 1161–1166; Dec. Dig. § 287.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CARRIERS (§ 320, 347*)—INJURIES TO PASSENGERS—TAKING UP PASSENGERS
—EXCURSION TRAIN.·

    Plaintiff, who was a young woman, went with a large number of other people to a village station on defendant's railroad to take a train for an excursion, which had been advertised by defendant. The platform, which was of cinders and gravel, was on a level with, and extended to, the nearest rail. There was an unusual number of people on the platform awaiting the train as it came in, and plaintiff, who had not procured a ticket, was passing between them and the track to get to the ticket office, when she was struck and injured by the bumper of the engine which extended beyond the rail 27 inches. There was no evidence that the engineer gave any signal or warning as the train approached plaintiff, and she testified that she did not see it as it was behind her, although she knew it was coming, and not far away. *Held*, that the questions of defendant's negligence and plaintiff's contributory negligence were both for the jury.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325, 1346, 1350–1386, 1388, 1397, 1402; Dec. Dig. §§ 320, 347.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action at law by Sarah J. Flintham, by Jennie Cook, her next friend, against Judson Harmon, receiver of the Pere Marquette Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Howard Streeter (Stevens, McPherson & Bills, on the brief), for plaintiff in error.

E. C. Shields (Shields & Shields, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was an action for personal injuries, and resulted in a verdict and judgment against the receiver for $1,280. Defendant in error was injured June 6, 1906, at the railroad station in the village of Howell, Mich., situated on the Detroit Division of the Pere Marquette Railroad. This division extends from Grand Rapids to Detroit, was in possession of and operated by Hon. Judson Harmon, as receiver, and the action was brought against him in his official capacity. The track runs east and west at Howell, and the station is situated on the north side of the track. The building is about 56 feet in length, having a bay window 8 feet in width and projecting 4 feet south of the line of the main structure. The space between the main structure and the first rail was 15 feet 4 inches, and was covered with mixed cinders and gravel, and maintained and used as a platform at a level with the rail. A sidewalk was maintained at the west end of the station, and was the way ordinarily used by foot passengers going to or coming from the village.

The railroad had advertised that an excursion would be made over the road at reduced rates of fare on June 6, 1906, to Detroit. On the morning of that date nearly 100 persons assembled at this station. Miss Flintham lived in Howell, and went to the station for the pur-

pose of going on the excursion as a passenger. Shortly before the arrival of the train, while in search of her aunt and walking along the sidewalk at the west end of the station, she heard, though she did not see, the train coming from the west. A curve in the track along the west approach to the village seems to have prevented her from seeing the train. Failing to find her aunt, and not having purchased her ticket, she returned towards the track and attempted to pass eastward between the crowd and the north rail of the track to reach the ticket office in the ladies' waiting room located east of the bay window before mentioned. She had walked about 20 feet, when she was struck in the back by the end of the bumper of the locomotive, and seriously injured.

The bumper projected over the north rail and platform about 27 inches. Complaint is made that there was nothing in the platform specifically to indicate the line of danger caused by the projecting bumper of the engine or the overlap of the train, and that no provision was made by the railroad to warn persons of such danger who were intending to take the train. No complaint, however, is made of any defect in construction or maintenance of the place so furnished and used as a platform.

At the close of the testimony of plaintiff below, a motion was made by the railroad to direct a verdict on the grounds that the evidence did not show negligence on its part, but did show negligence of plaintiff. The motion was overruled and exception reserved, and this ruling is made the basis of two assignments of error. Plaintiff in error thereupon introduced its testimony.

[1] It is scarcely necessary to say, for it has been said so often, that we cannot consider the supposed defects in the case as it stood at the time the motion to direct was overruled, for the railroad waived error, if there was any, by introducing testimony in its own behalf. McCabe & Steen Co. v. Wilson, 209 U. S. 275, 276, 28 Sup. Ct. 558, 52 L. Ed. 788; Detroit United Ry. v. Nichols, 165 Fed. 289, 294, 91 C. C. A. 257 (C. C. A. 6th Cir.); Leonard Martin Const. Co. v. Highbarger, 175 Fed. 340, 342, 99 C. C. A. 128 (C. C. A. 6th Cir.). The court subsequently refused to grant requests which were based on reasons the same as those stated in the motion to direct; but they do not differ in effect from a motion made to direct a verdict at the close of all the evidence and must be tested by the familiar rules in that behalf. Erie R. Co. v. Rooney, 186 Fed. 16, 19, 108 C. C. A. 118 (C. C. A. 6th Cir.).

The contention is that the presence of the railroad track was of itself a warning of danger, and that Miss Flintham could not have failed to see the approaching train if she had used her eyes. This does not state the whole case. There are other pertinent questions of fact, such as (1) whether the railroad induced people in unusual numbers to come to its station without providing any special means of warning them against danger from the approach of the train intended for their accommodation; and (2) whether Miss Flintham was bound at her peril to estimate the distance between the north rail and the crowd and so to anticipate both the danger of the overlap of the

engine and train and of its overtaking her, when attempting to pass between the rail and the crowd in her efforts to reach the ticket office.

The case chiefly relied on to show that the railroad was not negligent and that Miss Flintham was is Dotson v. Erie Railroad, 68 N. J. Law, 679, 686, 54 Atl. 827. That case and this contain distinguishing facts. There nothing was done by the railroad outside of its ordinary course of business to bring about an unusual gathering of people at the station to board the train. The jury in that case based its finding solely upon negligent construction of the platform, and the court held that, so far as the question of faulty construction was concerned, a verdict should have been directed for the railroad. So far as now important, the platform there as here was on a level with the top of the rail; and it consisted of flagging about the station, and thence of crushed stone to within 18 inches of the rail and then of planking to the rail. The injured plaintiff was walking on the platform in a place of safety, but swerved to a point so near to the rail as to be struck by the bumper of the engine drawing the train she was about to take. She testified that she was crowded toward the rail by passengers who alighted from the down train, but the testimony of her own witnesses as well as those of the company satisfied the court that she was probably mistaken. The engineer saw her turn toward the rail, gave the danger signal, and put on the emergency brake, but too late to avoid striking her. The charge of the court below appeared to the reviewing court to have assumed without proof that the platform stopped at the edge of the graveled surface where it met the planking along the rail. Say the court (68 N. J. Law, 686, 54 Atl. 830):

"Such a designation by the court would lead the jury to assume without evidence that the company had fixed the danger line at that point eighteen inches from the rail, and thus enlarged to a degree the company's liability for safety to the passenger."

Plainly the reasoning of the court (upon which learned counsel here rests his argument) could be accepted with reference to the facts and rulings there under review, without being treated as applicable to the present case. It is not disputed in this case that Miss Flintham had gone to the station with the intention of going on the excursion train as a passenger, and that at the time of receiving her injury she was walking on the platform toward the ticket office for the purpose of purchasing the necessary ticket. It would seem from the charge that the railroad conceded at the trial below, as in effect it concedes here that these facts fixed the status of Miss Flintham as a passenger, and as entitled to a measure of care at the station as follows:

"I also instruct you, as requested, that the duty imposed upon the railroad company to passengers at stations is the duty of exercising reasonable care for their protection, and the defendant in this case fulfilled its duty if it furnished facilities, and conducted the movement of passengers at the station at Howell in the manner generally found and believed to be safe by prudent railway companies."

[2] It is obviously a reasonable rule, deducible from the principles of law governing common carriers, that a carrier's proposal through advertisement to conduct an excursion calculated to induce people to

travel in unusual numbers implies that it will furnish greater facilities to accommodate and to care for those who avail themselves of the proffer than its usual service requires. This applies to the stations and crowds assembling there, as well as to transportation. Taylor v. Pennsylvania Co. (C. C.) 50 Fed. 755, 759; Cannon v. Mid. Gt. W. Ry. Co., 6 Irish Rep. (1880–81) 199, 208; Cousineau v. Traction & Lighting Co., 145 Mich. 314, 318, 108 N. W. 720; I. C. R. R. Co. v. Treat, 179 Ill. 577, 579, 54 N. E. 290. Rejecting the idea that a carrier would be required to have a force capable of overcoming whatever violence a drunken or riotous mob might choose to exhibit, it was said in the Cannon Case, supra:

"When a railway company, for an excursion or other special purpose, invites numbers to its stations, it is not unreasonable to require more than the ordinary attendants to perform the same duties which devolve upon the usual staff at other times."

The rule thus laid down finds support in a class of cases which define the duties of carriers, where, owing simply to density of population crowds are in the habit of gathering. Pennsylvania R. Co. v. Stockton, 184 Fed. 422, 424, 106 C. C. A. 433 (C. C. A. 3d Cir.); Young v. New York, etc., Railroad. 171 Mass. 34, 35, 50 N. E. 455, 41 L. R. A. 193; Dittmar v. Brooklyn Heights R. Co., 91 App. Div. 378, 86 N. Y. Supp. 878, 879; McGearty v. Manhattan R. Co., 15 App. Div. 3, 4, 43 N. Y. Supp. 1086; Graham v. Manhattan R. Co., 149 N. Y. 336, 341, 43 N. E. 917.

[3] The people at the Howell station seem to have so blocked the platform as to cause Miss Flintham to believe that she must go between the crowd and the track in order to reach the ladies' ticket office; and, when she was struck by the bumper, she was walking close to the crowd—as one witness said, "she was hugging the crowd." She describes the situation thus:

"When I turned back. I looked to see if any train was coming, and did not see any. Then I started to push through the crowd. There was quite a crowd. I started, I didn't like to push through the crowd so I started on the outside to get my ticket, * * * I went out on the edge of the crowd. * * * Nobody warned me that the train was coming."

The testimony as to the speed at which the train approached the station is in conflict. She was run down in broad daylight. The engineer testified, but said nothing of sounding an alarm signal or of making any effort to stop his train, and we fail to discover that any employé of the company did anything specially to warn Miss Flintham of her danger; and no one else appears to have realized her danger in time to warn her. We cannot in these circumstances conceive that the court could have done otherwise than to submit the cause, as it did, to the jury, upon the questions both of negligence of the railroad and contributory negligence of Miss Flintham. It is certain that the railroad specially invited the public to assemble at its stations and then at this station took no steps out of the ordinary character to warn the people gathered there of any danger or even to warn the plaintiff of her proximity to the zone of danger; and it is in vain to say that her conduct can be held, as a matter of law, to have amounted to contributory negligence. As Justice Brewer said

in (the much-cited case of) Richmond & Danville Railroad Co. v. Powers, 149 U. S. 45, 13 Sup. Ct. 749, 37 L. Ed. 642:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

The assignments of error must be overruled, and the judgment below affirmed, with costs.