STRAIT v. YAZOO & M. V. R. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1913.)

No. 2,363.

1. DEATH (§ 8*)—WRONGFUL DEATH—PARTIES.

A cause of action for decedent's wrongful death arose in Mississippi, where the right to sue is preserved by Laws Miss. 1908, c. 167, to decedent's mother, brothers, and sisters. The action, however, was brought in Tennessee, in which state the right of action is vested in decedent's personal representative by Code Tenn. 1896, §§ 4025–4029. *Held* that, since the administrator's relation to the beneficiaries was that of trustee only, the fact that the action was brought in Tennessee by decedent's mother, instead of by his administrator, was immaterial.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 12, 36, 52, 121, 133; Dec. Dig. § 8.*]

2. COURTS (§ 8*)—ACTION UNDER LAWS OF OTHER STATE—PENAL LAWS.

Code Miss. 1906, § 4053, provides that where a railroad is constructed so as to cross a highway, and it is necessary to raise or lower the high-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

way, the company shall make proper and easy grades, so that its road may be conveniently crossed, and shall keep such crossings in good order, and any company failing to comply with such provisions shall forfeit $100 to be recovered by action in the name of the county in which the crossing is situated. *Held*, that the penalty prescribed was merely a means of official enforcement of the statutory duty, and that the statute was not so far penal that a civil liability which would be enforceable in another state, could not arise from a violation thereof.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 18, 19; Dec. Dig. § 8.*]

3. RAILROADS (§ 303*) — HIGHWAY CROSSINGS — CONSTRUCTION — STATUTORY REGULATION—VIOLATION—NEGLIGENCE PER SE.

Code Miss. 1906, § 4053, provides that, when a railroad is constructed so as to cross a highway, the company shall make proper and easy grades in the highway, and shall keep such crossings in good repair, and any company that shall fail to comply with such provisions shall forfeit $100 to be recovered in an action in the name of the county in which the crossing is situated. *Held*, that the paramount intent of the statute was to protect members of the public against injuries from its violation, and that a failure to observe such requirements, resulting in death of a traveler using the crossing, constituted negligence per se for which the railroad company was liable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 959–963, 966, 967; Dec. Dig. § 303.*]

4. RAILROADS (§ 350*)—CROSSING ACCIDENT—DEFECTIVE CROSSING—DEATH OF TRAVELER—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a railroad company for death of a traveler while driving a loaded wagon over a defective highway crossing, evidence *held* to require submission of decedent's contributory negligence to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Viola Strait, for the use and benefit of herself and the other next of kin of Curtis Strait, deceased, against the Yazoo & Mississippi Valley Railroad Company and another. Judgment for defendants, and plaintiff brings error. Reversed, and new trial granted.

Dan F. Elliotte and Bell, Terry & Bell, all of Memphis, Tenn., for plaintiff in error.

Fitzhugh & Biggs and T. A. Evans, all of Memphis, Tenn. (Chas. N. Burch, of Memphis, Tenn., of counsel), for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. Plaintiff commenced her action in the circuit court of Shelby county, Tenn., for wrongful death of her son, and defendants removed the case to the court below. Under pleas of not guilty and contributory negligence, judgment was entered upon a verdict for defendants; plaintiff only having adduced evidence. The death occurred in the state of Mississippi at defendants' railroad crossing of a certain country road. While riding upon an ordinary farm wagon laden with loose cotton seed and drawn by mules, which

---

he was driving, deceased was, by reason of the unsafe and dangerous condition of the crossing, as it is alleged, thrown to the ground, between the front end of the wagon and the mules, when his neck was caught and broken by the passage of one or both of the wheels of one side of the wagon. The claim of liability is based upon alleged violation of certain statutes of Mississippi. The declaration comprises two counts, which in substance are the same, except that the first contains one of the statutes mentioned and the other the second statute; and, as we understand, reliance is placed upon the first, which is section 4053 (3555), Mississippi Code of 1906, and the portion in issue is as follows:

"Where a railroad is constructed so as to cross a highway, and it be necessary to raise or lower the highway, it shall be the duty of the railroad company to make proper and easy grades in the highway, so that the railroad may be conveniently crossed, and to keep such crossings in good order; * * * and any company which shall fail to comply with these provisions shall forfeit the sum of one hundred dollars, to be recovered by action in the name of the county in which the crossing * * * is situated."

At the crossing in question it was necessary to raise the highway so as to maintain the rails at a level of five feet above the surface of the original highway. This, of course, necessitated approaches, and it is conceded that the grades of these approaches are "very steep"; one of the principal witnesses stating that the length of the approach upon which we understand the accident to have happened was 10 to 12 feet, which, if correct, signifies an obviously unusual grade; but just why these approaches were given such grades is not explained. That portion of the country (in Tallahatchie county, near Webb) is exceptionally flat, and the country road runs for some distance parallel and adjacent to the railroad on one side as far as the crossing, where it turns abruptly and passes over the railroad and continues thence in a direction perpendicular to the course of the railroad. The evidence tends to show that both approaches were out of repair at the time of the accident.

The particular features of disrepair that were dwelt upon by the witnesses were a depression caused by travel and rains at a culvert in the east approach, and a difference in level of five or six inches between the wooden plank on the outside of the rail at the top of the west approach and the approach itself, and this depression grew deeper for a short distance until it reached a ridge, called by the witnesses a "bump," which was some eight or ten inches in height and three to four feet in length, running across the southerly portion of the traveled way of the approach. The forward end gate of the wagon bed was forced from its fastenings when the front wheels of the wagon passed over the west plank of the crossing into the depression, and the deceased, who was holding his feet against this end gate, was jolted out of the wagon either as it entered the depression or struck the bump before described.

However, it is earnestly insisted, and the trial judge was impressed with the view, that the accident was due to the condition of the wagon and harness and the conduct of the deceased, rather than the defective condition of the crossing. This contention proceeds upon a theory

that is seemingly consistent with the existence of the defects pointed out in the crossing; for example, the argument is that, if the end gate had not been defectively fastened, it would not have given way, if the harness had been equipped with breeching the mules could have steadied the wagon, and if the deceased, who appears to have been familiar with the crossing, had given more attention to the team and less to people riding with him on the wagon, he could (by encroaching upon private property) have driven around the bump.

Now, despite the rule that contributory negligence might be a good defense in any aspect of the case, we are met by contention of plaintiff that the case was submitted to the jury under instructions that did not give due effect to the Mississippi statute, before quoted. The declaration is in form based upon that statute, as we have said, and the claim is that the duty it imposed upon the railroad companies respecting this crossing was in its nature and effect absolute. Whether the statute was regarded by the court below as applicable to the case and was intended to be construed by any language found in the charge does not appear; but it is certain that the duty of the companies concerning the crossing was not treated as absolute. The duty as laid down by the court was the rule of ordinary care and caution. This was excepted to, and request was made to instruct the jury that the duty prescribed by the statute is absolute, "and for the failure to perform which the railroad company is absolutely liable to any member of the public who shall be injured by" such failure. Was plaintiff entitled to the benefit of this or a similar instruction? If so, it is hard to see why she was not prejudiced by its refusal. It is certainly conceivable that under the charge given the jury believed both that the companies and the deceased were free from negligence, and yet that under an instruction similar in effect to the one refused the verdict would have been the other way.

[1] Whatever cause of action the plaintiff has arose in Mississippi. Northern Pacific Railroad v. Babcock, 154 U. S. 190, 199, 14 Sup. Ct. 978, 38 L. Ed. 958. A right of action was by statute of that state preserved to the mother and the brothers and sisters of the deceased, which, if the death was in truth caused by the wrongful or negligent act of the defendants, was in Mississippi enforceable by the mother. Laws of Miss. 1908, § 721, p. 184. It is to be observed that this statutory policy is in substantial harmony with that of Tennessee. Tenn. Code of 1896, §§ 4025–4029, p. 986. True, if the right of action had arisen in Tennessee, the suit, in view of the beneficiaries, would have been maintainable in that state only through a personal representative of the deceased; but since the administrator's relation to the beneficiaries, like that of the mother in the present instance, would have been simply that of a trustee, such a difference in parties plaintiff is of no consequence. Cincinnati, H. & D. R. Co. v. Thiebaud, 114 Fed. 918, 924, 52 C. C. A. 538 (C. C. A. 6th Cir.). It follows that, while suit in the present instance could have been maintained in Mississippi, it was open to enforcement in either the state court where it was brought, or in the court below to which it was removed. Dennick v. Railroad Co., 103 U. S. 11, 21, 26 L. Ed. 439; Texas & Pacific Ry. Co.

v. Cox, 145 U. S. 594, 605, 12 Sup. Ct. 905, 36 L. Ed. 829; Stewart v. Baltimore & Ohio R. Co., 168 U. S. 445, 448, 449, 18 Sup. Ct. 105, 42 L. Ed. 537; Southern Pac. Co. v. De Valle Da Costa, 190 Fed. 689, 692, 111 C. C. A. 417, and citations (C. C. A. 1st Cir.); Williams v. Camden Interstate Ry. Co. (C. C.) 138 Fed. 571, affirmed in 140 Fed. 985, 72 C. C. A. 680 (C. C. A. 6th Cir). Although the right to maintain the action in Tennessee is not questioned by counsel, we think it is helpful to a solution of the next question for consideration, to keep in mind that the cause of action had its origin in Mississippi and was enforceable in either of the courts below; for it would be an apparent contradiction to say both that the right of action could be so enforced and that there must be subtracted from the right the standard of duty resting upon defendants in that state.

[2] The important question, then, is whether defendants' liability is affected by the Mississippi statute (which in material part is set out above). Contention is made that the statute cannot in any respect be recognized or enforced, because it is an enactment of another state and is strictly penal. Counsel invoke the settled and familiar rule that "the courts of no country execute the penal laws of another." The Antelope, 10 Wheat. 66, 123, 125, 6 L. Ed. 268. We cannot think this rule is applicable here. The contention impliedly concedes that in Mississippi defendants would be amenable to civil liability for violation of the statutory duty. True, the statute imposes a forfeiture of $100 for failure to comply with its provisions, but this is recoverable only "in the name of the county in which the crossing * * * is situated." This would seem to be simply a means of official enforcement of the statutory duty. The present action is not to enforce the duty, but to redress a private wrong for its violation. Official exaction of the forfeiture is palpably inadequate to compensate for such wrongs; moreover, the proceeds of forfeiture are not made applicable to such objects.

[3] The paramount intent of the statute is manifestly to protect members of the public against injuries from its violation (as also their accompanying and usual means of travel), who have occasion in the customary ways to use the crossings. While no decision of the courts of Mississippi distinctly passing upon the question of civil liability has come to our notice, it is worthy of observation that the Supreme Court of the state has affirmed the power to enact the statute and has so defined its scope as to render it applicable to streets of municipalities as well as country highways (Hamline v. Railway Co., 76 Miss. 410, 417, 25 South. 295); and has also apparently recognized the right of an individual to recover civil damages for violation of the statutory duty (Railroad Co. v. Sneed, 84 Miss. 252, 257, 36 South. 261), for the case seemingly failed only because the injury complained of happened after the wagon carrying the plaintiff had safely passed the crossing in question, and at that point the driver had mismanaged the horse.

There are many decisions which hold that where a statute is passed requiring specific things to be done for the protection of a particular class of persons, without in terms imposing civil liability though in-

. flicting a penalty for failure to observe such requirements, violation of the act constitutes negligence per se; this is settled in our court. See decisions cited in Sterling Paper Co. v. Hamel (C. C. A.) 207 Fed. 300, decided June 30, 1913. Such is the effect, too, in principle of well-known decisions concerning the federal safety appliance acts, in which there was also failure expressly to create civil liability for special injury, although a penalty was inflicted for violation of the statute.[1]

However, these decisions alone are not determinative of the present question; this is because of a class of decisions which hold that, where a duty is imposed to protect the public generally, a particular individual suffering injury is not entitled to redress. This may be sufficiently illustrated by the decision in Taylor v. Lake Shore & Mich. S. Ry., 45 Mich. 74, 7 N. W. 728, 40 Am. Rep. 457, where it was held that a city ordinance requiring all persons to keep their sidewalks free from ice and to pay the city all damages that might be recovered against it for injuries occurring through neglect to comply with the ordinance, imposed a purely public duty, and did not give a right of action against an abutting property owner in favor of a person injured by slipping on the ice. See, also, Cook v. Johnston, 58 Mich. 437, 439, 25 N. W. 388, 55 Am. Rep. 703. Yet in Hayes v. Michigan Central R. R. Co., 111 U. S. 228, 240, 4 Sup. Ct. 369, 374 (28 L. Ed. 410), it was held that damages could be recovered for special personal injury suffered through neglect of the railroad company to comply with a city ordinance adopted and accepted in pursuance of statutory authority, requiring the company to construct and maintain a fence between the railroad and a public park, though no penalty was imposed nor right of action in terms given for failure to perform the duty; Mr. Justice Matthews saying in the opinion:

"The duty is due, not to the city as a municipal body, but to the public, considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his individual compensation, and to an action for its recovery."

In Weller v. Lehigh, etc., Ry. Co., 81 N. J. Law, 95, 97, 79 Atl. 259, 260, under a statute imposing a particular duty respecting railroad crossings without inflicting penalty or expressly giving a right of action, the right to recover for injuries incurred by reason of a defect in a crossing was sustained; and in the opinion it was said:

"The duty imposed upon the defendant by section 26 of the General Railroad Law was 'to construct and keep in repair good and sufficient bridges and passages over, under and across the railroad or right of way where any public or other road, street or avenue now or hereafter laid shall cross the road,

---

[1] See Johnson v. Southern Pacific Co., 196 U. S. 1, 17, 22, 25 Sup. Ct. 158, 49 L. Ed. 363, reversing the decisions below and awarding new trial; Schlemmer v. Buffalo, Rochester, etc., Ry., 205 U. S. 1, 10, 15, 27 Sup. Ct. 407, 410 (51 L. Ed. 681), where Mr. Justice Brewer, in announcing the dissenting opinion and leading up to the discussion of contributory negligence, said: "For the rule is well settled that while, in cases of this nature, a violation of the statutory obligation of the employer is negligence per se, and actionable if injuries are sustained. * * *" Also, s. c., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596, affirming dismissal of the case on retrial on ground alone of contributory negligence.

so that public travel on the said road shall not be impeded thereby.' For the breach of such duty the defendant is liable to one of the public injured thereby while lawfully using the highway."

The same rule prevails in Indiana with respect to such crossings, under a statute which neither imposes a penalty nor expressly creates a right of action (Lake Shore & Michigan Southern Ry. Co. v. McIntosh, Adm'r, 140 Ind. 261, 278, 38 N. E. 476; Southern Ind. R. Co. v. McCarrell, 163 Ind. 469, 472, 473, 71 N. E. 156); and in Cleveland, C., C. & St. L. Ry. Co. v. Clark, 97 N. E. 822, 826, the Appellate Court of that state distinctly held that the railroad company's "failure to discharge this duty is negligence"; and the Texas Civil Courts of Appeals hold that the rule of ordinary care touching the construction and maintenance of railway crossings, under a statute similar to that of Indiana is not sufficient (Galveston, H. & S. A. Ry. v. White, 32 S. W. 186, 187; T. C. R. R. Co. v. Randall, 51 Tex. Civ. App. 249, 253, 113 S. W. 180); and in St. Louis S. W. Ry. Co. of Texas v. Smith, 49 Tex. Civ. App. 1, 4, 107 S. W. 638, it was held that the duty "to keep the crossing in repair is absolute."

We think it is fairly deducible from these decisions, especially from that of Hayes v. Michigan Central R. R. Co., supra, that every such enactment must be examined to determine whether its intent was to impose the duty purely for the abstract public benefit, or also for the benefit of the individuals affected; and hence the evil to be remedied and the language employed for that purpose by the particular statute or instrument imposing the duty is of prime importance. For example, would it be to execute in its entirety the purpose of the Mississippi Legislature if we were to interpret its language to mean that merely an exclusively public benefit was designed, and that only the prevailing common-law duty of ordinary care respecting the changes involved in the portions of highway crossings lying within railroad rights of way was intended simply to be transposed from the state or county road officials to the railroad companies? Would not this be unduly to limit the plain intent of the specific requirements of the statute? The statute is restricted to crossings involving changes in grade; and the command is "to make proper and easy grades * * * so that the railroad may be conveniently crossed, and to keep such crossings in good order."

It results that, as respects suits maintained in that state, the duty prescribed by the Mississippi statute inures to all persons suffering special injuries through failure of railroad companies to comply with its provisions, wherever such injuries are sustained while using crossings with reasonable care; as it seems to us, rights of action in such instances are implied as plainly as if they were expressly given. The statute, then, is to be so treated; and since the duty out of which such liability grows is in form both imperative and continuing, the protection its observance would afford to travelers must be regarded as the dominant idea of the Legislature enacting the law, and the forfeiture as an incident. Such a statute cannot be strictly penal, for it is also remedial. Johnson v. Southern Pacific Co., supra, 196 U. S. 17, 25 Sup. Ct. 158, 49 L. Ed. 363. True, in one sense the act may

be said to be in the nature of a penal statute, but this is not enough to defeat its enforcement in another jurisdiction. As Mr. Justice Gray said in Huntington v. Attrill, 146 U. S. 657, 667, 13 Sup. Ct. 224, 227 (36 L. Ed. 1123):

"Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American Constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

Attention is also directed to the opinion of Judge Putnam in Boston & M. R. R. v. Hurd, 108 Fed. 116, 119, 47 C. C. A. 615, 56 L. R. A. 193 (C. C. A. 1st Cir.). See, also, Malloy v. American Hide & Leather Co. (C. C.) 148 Fed. 482, 483. The conclusion that the penal nature of the statute is ineffective to defeat enforcement of the action is strengthened by the rule that such a forfeiture as this could be recovered by civil action. Hepner v. United States, 213 U. S. 103, 107, 29 Sup. Ct. 474, 53 L. Ed. 720, 27 L. R. A. (N. S.) 739, 16 Ann. Cas. 960; United States v. Ill. Cent. R. Co., 170 Fed. 542, 543, 95 C. C. A. 628 (C. C. A. 6th Cir.).

It was the right and the duty of the court below to determine how the Mississippi statute affected the suit (Huntington v. Attrill, supra, 146 U. S. 683, 13 Sup. Ct. 224, 36 L. Ed. 1123); and we therefore hold with respect to this accident that, if the condition of the crossing amounted to a breach of the duty imposed by the statute, such violation was negligence per se.

[4] We may properly advert to one other question. Insistence is made that the result reached below was correct, and so should not be disturbed, because the trial judge should have directed a verdict for the defendants on the ground of contributory negligence. We think it is not too much to say that fair-minded men might honestly draw different conclusions from the evidence as to the care or neglect of the deceased. It follows that the question was not one of law. Richmond & Danville R. Co. v. Powers, 149 U. S. 43, 45, 13 Sup. Ct. 748, 37 L. Ed. 642; Tex. & Pac. Ry. Co. v. Harvey, 228 U. S. 319, 324, 33 Sup. Ct. 518, 57 L. Ed. 852; Harmon v. Flintham, 196 Fed. 635, 639, 116 C. C. A. 309 (C. C. A. 6th Cir.).

The judgment below is reversed, with costs, and a new trial awarded.