LUCY OESCH, RESPONDENT, v. ST. LOUIS PUBLIC SERVICE COMPANY, A CORPORATION, APPELLANT.—59 S. W. (2d) 758.

St. Louis Court of Appeals. Opinion filed May 2, 1933.

Motion for rehearing denied May 16, 1933.

Certiorari denied by Supreme Court June 10, 1933.

1056

*Brownrigg & Muldoon* for respondent.

*T. E. Francis, B. G. Carpenter* and *Allen, Moser & Marsalek* for appellant.

BECKER, P. J.—Plaintiff obtained judgment against defendant in her action for damages for personal injuries alleged to have been sustained by being struck, pushed, and knocked down while in the act of entering one of defendant's street cars, by a crowd of people who, like she, were attempting to board one of defendant's cars from a station platform of the defendant company. Defendant appeals.

Plaintiff's petition alleges, and the testimony adduced on her behalf tends to prove, that the defendant owned and maintained upon its property adjacent to the northbound tracks of its Kirkwood-Ferguson car line, immediately north of Easton Avenue in the city of St. Louis, a waiting room and a platform for use of people

intending to become passengers on its said northbound street cars; that said platform was a brick walk six feet two inches wide extending along the west side of the defendant's said waiting room; that the overhang of the street cars on this line was approximately two feet, which left a space of four feet two inches between the wall of the waiting room and any car of the defendant which stopped at the platform to take on or discharge passengers; that large numbers of prospective passengers frequently crowded upon this platform and particularly so on Saturday mornings. On Saturday morning, November 3, 1928, plaintiff took her place upon said platform to await the arrival of one of defendant's Kirkwood-Ferguson street cars. The car which finally came up and stopped at the platform was almost an hour late so that not only had the platform become crowded with people, but people stood in the waiting room.

According to plaintiff's own testimony, on previous Saturday mornings, about the same time, she had observed that crowds collected, and that when a car arrived and stopped at the platform the crowd "made a rush for the door;" that on the occasion in question, when the car came to a standstill at the platform and the conductor opened the rear door thereof, she was standing within four feet of the door, with some four or five people between her and the door, and "there were a great many people there at that time. . . . They were standing on the platform and in the waiting room," and when the rear door of the car was opened "they all made a rush for the door."

"Q. And what did you do? A. I got on the car; tried to.

"Q. Did anybody get on ahead of you? A. ˙ Yes, sir.

"Q. About how many would you say? A. About five or six.

"Q. And when you started to get on, what happened to you? A. Some one pushed me from in back of me.

"Q. And what happened to you? A. I fell.

"Q. And how near on the car had you gotten when you fell? A. I had one foot on the first step and had raised the other foot to step on the second step. . . . I fell forward on my hands and knees."

On cross-examination she testified that as the car approached the platform "I was standing back against the wall."

"Q. And there were four of five people in front of you, between you and the car? A. They crowded in in front of me when the car door opened.

. . . . . .

"Q. Had there been anybody in front of you before this car pulled up? A. Yes, sir.

"Q. How many? A. I couldn't say."

Lenore Ehret, a witness adduced on behalf of plaintiff, testified that she was one of the people who had gotten on the car ahead of plaintiff; that there was "a large crowd" standing on the platform

waiting to board the car; and that there was "generally a crowd from going shopping" on the platform, "particularly on Saturday mornings."

Another witness for plaintiff, Grace Martin, testified she was standing near the plaintiff as the car came to a stop at the platform; that she had been waiting about an hour or more for the car; that "there was a large crowd there," and that all the space on the platform between the wall of the waiting room and the said car was filled with people; and that as the car stopped and the rear door was opened "they pushed for the door. . . . I was standing on the right-hand side of Mrs. Oesch, with people crowded in between; I didn't get behind. There was a colored lady directly behind Mrs. Oesch, but the crowd crowded in so, pushing this colored lady, causing Mrs. Oesch to fall, hitting herself on the platform." This witness reiterated that she had often been on this platform on Saturday mornings, and that "there wasn't no vacant space any time I had been there," and that the crowd, whenever the door of the car was opened, "it seems like everybody wanted to get on the car at once. . . . They pushed everybody to get on the car."

On cross-examination this witness, with reference to the crowded condition of the platform on Saturday mornings, during the period of three years preceding the date in question, was asked:

"Q. Just jammed in like sardines in a box wasn't it; just close together; just one pushed right up against the other, that is the way they were, wasn't it? A. Yes.

"Q. That is true, isn't it? A. Yes.

"Q. And that is what you saw each and every Saturday? A. Yes."

And upon redirect and recross-examination the witness testified that on this particular Saturday she had waited an hour; and that the crowd was larger than usual, so much so that people were in the waiting room as well as filling the platform.

The defendant introduced in evidence photographs of the tracks, platform, and waiting room, and adduced three physicians who testified with reference to plaintiff's injuries.

At the close of plaintiff's case, and again at the close of the entire case, defendant offered instructions in the nature of demurrers, each of which was overruled.

Defendant, appellant here, earnestly contends that the plaintiff, by her evidence, made no case for the jury, and that the trial court erred in refusing to peremptorily direct a verdict for defendant. It is argued that the fact that defendant's platform and adjoining waiting room were crowded with people awaiting the arrival of one of defendant's street cars, and upon its arrival the assembled crowd made a rush for the door of the car, with the result that plaintiff, while she was in the act of boarding the car, was pushed and caused

to fall by some one in back of her, who in turn was being pushed by the crowd behind, in their endeavor to board the car, is wholly insufficient to establish any negligence or breach of duty on the part of the defendant carrier. The point is without merit.

"The carrier must use reasonable care in avoiding or controlling crowds of persons at its stations imperiling the safety of its passengers." [10 C. J. 921, sec. 1345.]

A number of cases support the rule that where the congestion of passengers at railway stations, resulting from their number and eagerness to board cars waiting for them, is not an extraordinary circumstance, but rather a condition which should have been foreseen from the very nature of the business, and provided for by the adoption of reasonable expedients, any physical harm suffered by a passenger may be said to have arisen through the defendant's negligence in permitting a combination of passengers to press violently upon him, and while not an assault, the wrong finally inflicted is none the less a violation of its duties, for which compensation in damages can be recovered. [Grubb v. Kansas City Rys. Co. (Mo. App.), 230 S. W. 675; S. Covington & C. St. Ry. Co. v. Vanice (Ky. App.), 278 S. W. 116; Kuhlen v. Boston, etc., St. Ry. Co., 193 Mass. 341; Penn. R. Co. v. Stockton, 184 Fed. 422; Coyle v. Phila. & R. Ry. Co., 256 Pa. 496.]

There was evidence that for years past there was usually a large crowd on this narrow platform of the defendant on Saturday mornings, and that customarily when at such times a car stopped at this platform and the door of the car was opened, the crowd on the platform would make a rush for the door, and that "everybody was pushed" in the general endeavor to get on the car. Each Saturday morning those who gathered on the platform awaiting the cars there were "jammed in like sardines in a box; . . . one pushing against the other." The Kirkwood-Ferguson cars, for one of which plaintiff was waiting, were scheduled to run at twenty-minute intervals, but on this particular morning intending passengers kept gathering upon the platform for a period of an hour before a Kirkwood-Ferguson car appeared, so when a car finally came up and the door opened, the crowd, selfishly intent, as experience shows a crowd is, and absent any control over it, surged and pushed toward the door, shoving one of their number, who happened to be immediately next behind plaintiff, into plaintiff, causing her injury.

In light of this situation the likelihood of one, waiting to board a car from this platform, being pushed or knocked down while endeavoring to board the car, by pressure of the crowd in its forward rush to get on the car, was a matter reasonably to be anticipated by defendant. Here, as in the Grubb case, supra, the congestion of the passengers upon this narrow platform, and the tendency of the crowd to rush forward, and pushing one against the other trying

to get on the car, was not an extraordinary circumstance, but was a condition which had prevailed on Saturday morning for a number of years. Such past experience should have caused the defendant to foresee the need of adopting reasonable precaution to prevent physical harm to its waiting passengers arising out of and caused by the known tendency of the crowd, under such conditions, to rush forward and to push and shove to get on the cars.

Upon the record before us, under the rule above announced, the question of defendant's negligence *vel non* in this regard was a question for the jury. It follows that the trial court properly ruled defendant's requested instructions in the nature of demurrers.

However appellant's assignment of error, that the trial court erred in giving plaintiff's instruction which submitted the case to the jury upon the humanitarian doctrine, is well taken. This instruction, among other things necessary to be found as a prerequisite for a verdict for plaintiff, required that the jury find that "defendant's agents and servants, in charge of and operating its said car saw and knew or by the exercise of ordinary care could have seen and known that plaintiff was in said position of imminent danger, if you find she was in such position, in time by the exercise of ordinary care, in time to have warned plaintiff of her said danger, if any, and in time by warning and remonstrance or otherwise to have checked, controlled or quieted said crowd and thereby have prevented plaintiff from being injured but that the defendant's said servants failed to exercise such care in either of such particulars but negligently and carelessly permitted the said crowd to rush forward, crowd upon and injure the plaintiff and that the defendant's failure, if any, to exercise said care was a direct cause of plaintiff's injuries, if any," then the verdict should be for plaintiff.

We have given, hereinabove, a full resume of the testimony and it clearly appears therefrom that no testimony was adduced from which the jury could find that, after plaintiff got into a position of imminent danger, there was anything that defendant could have done to have avoided plaintiff's injury. Plaintiff, upon the record before us, cannot be viewed as having come into a position of imminent peril until the very moment that she had one foot upon the first step of the car with the other foot raised in the act of stepping to the second step, at which moment the forward surging of the crowd back of the colored woman immediately behind plaintiff pushed against said colored woman, pushing her against plaintiff.

For the error noted the judgment should be reversed and the same remanded. It is so ordered. *Kane* and *McCullen, JJ.,* concur.